IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NESTE OIL OYJ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 12-662-GMS |
| ) | |
| DYNAMIC FUELS, LLC, SYNTROLEUM ) | |
| CORPORATION, and TYSON FOODS, INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

### I. INTRODUCTION

The plaintiff, Neste Oil Oyj ("Neste Oil") brought this patent infringement suit against Dynamic Fuels, LLC ("Dynamic Fuels"), Syntroleum Corporation ("Syntroleum"), and Tyson Foods, Inc. ("Tyson") (collectively, "the defendants") on May 29, 2012, alleging infringement of U.S. Patent No. 8,187,344 (the "'344 Patent"). (D.I. 1.) The defendants filed their respective Answers and Counterclaims to Neste Oil's Complaint on August 20, 2012. (D.I. 15; D.I. 17; D.I. 19.)

On August 17, 2012, however, Syntroleum filed a request for *inter partes* reexamination of the '344 Patent with the Patent and Trademark Office (the "PTO"). (D.I. 22 at 1.) The defendants then filed the present Motion to Stay Litigation Pending Reexamination of the Patent-In-Suit. (D.I. 21.) For the reasons that follow, the court will grant this motion and order that the case be stayed pending the PTO's reexamination.

### II. BACKGROUND

The '344 Patent, entitled "Fuel Composition for a Diesel Engine," was issued to Neste Oil on May 29, 2012 by the PTO. (D.I. 25 at ¶ 13.) The '344 Patent is directed to a diesel fuel composition including waste animal fats. (D.I. 26 at 3.) Neste Oil alleges that defendants produce a competing renewable diesel product that infringes this patent.

Neste Oil is also the owner of an earlier patent, U.S. Patent No. 7,279,018 (the "'018 Patent"), which shares the same specification with the '344 Patent. (D.I. 22 at 5.) The '018 Patent was the subject of a prior *ex parte* reexamination, in which all the claims of the '018 Patent were rejected. (*Id.* at 6.) Much of Syntroleum's invalidity position in the '344 Patent reexamination flows from the PTO's conclusions in this prior proceeding. (*Id.* at 9–13.)

### III. STANDARD OF REVIEW

The decision to stay a case lies within the sound discretion of the court. *See Cost Bros., Inc. v. Travelers Indent. Co.*, 760 F.2d 58, 60 (3d Cir. 1985); *First Am. Title Ins. Co. v. MacLaren, L.L.C.*, No. 10-363-GMS, 2012 WL 769601, at *4 (D. Del. Mar. 9, 2012); *Nokia Corp. v. Apple, Inc.*, No. 09-791-GMS, 2011 WL 2160904, at *1 (D. Del. June 1, 2011). This authority applies equally to patent cases in which a reexamination by the PTO has been requested. *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988) ("Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination." (internal citation omitted)); *Abbott Diabetes Care, Inc. v. Dexcom, Inc.*, No. 06-514-GMS, 2007 WL 2892707, at *4 (D. Del. Sept. 30, 2007). In determining whether a stay is appropriate, the court looks to the following factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether

discovery is complete and whether a trial date has been set." *First Am. Title Ins. Co.*, 2012 WL 769601, at *4 (quoting *Xerox Corp. v. 3 Comm. Corp.*, 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999)).

## IV. DISCUSSION

The court finds that, taken together, the three factors noted above favor granting a stay in this matter. The court will discuss each consideration in turn.

### A. Undue Prejudice

The first factor involves the potential for a stay to cause the plaintiff undue prejudice or place it at a clear tactical disadvantage. *See id.* As an initial matter, the court notes that staying any case pending PTO reexamination risks prolonging the final resolution of the dispute and therefore may result in some inherent prejudice to the plaintiff. *See Textron Innovations, Inc. v. Toro Co.*, No. 05-486-GMS, 2007 U.S. Dist. LEXIS 100102, at *8 (D. Del. Apr. 25, 2007). The court also recognizes, however, that the potential for delay does not, by itself, establish *undue* prejudice. *See Enhanced Sec. Research, LLC v. Cisco Sys., Inc.*, No. 09-571-JJF, 2010 WL 2573925, at *3 (D. Del. June 25, 2010); *Wall Corp. v. BondDesk Grp., LLC*, No. 07-844-GMS, 2009 WL 528564, at *2 (D. Del. Feb. 24, 2009). Rather, in considering whether a plaintiff might be unacceptably prejudiced by a stay, the court looks to other considerations including the timing of the reexamination request, the timing of the stay request, the status of the reexamination proceedings, the relationship between the parties, and the related question of whether the plaintiff may be compensated through future money damages. *See, e.g., Boston Scientific Corp. v. Cordis Corp.*, 777 F. Supp. 2d 783, 789 (D. Del. 2011).

Here, the timing of the reexamination request and motion to stay present no evidence that

the defendants sought an unfair tactical advantage. Syntroleum filed the reexamination request less than three months after this case was commenced, and the defendants filed the present motion only five days later.

The status of the reexamination, however, may be cause for concern. As Neste Oil points out, the PTO proceeding could be expected to last for approximately three years. (D.I. 26 at 13.) Given that the PTO only granted reexamination about four months ago, it is reasonable to presume that the process might continue well into 2015. As noted above, delay can be prejudicial in its own right, even if not unduly so.

Finally, the court considers the relationship between the parties. Neste Oil contends that it will be severely prejudiced by a stay because it competes directly with the defendants in the renewable diesel fuel market. (D.I. 26 at 11.) Indeed, "[c]ourts are generally reluctant to stay proceedings where the parties are direct competitors." *Boston Scientific Corp.*, 777 F.2d at 789; *see also ImageVision.Net, Inc. v. Internet Payment Exch., Inc.*, No. 12-054-GMS-MPT, 2012 WL 5599338, at *4–5 (D. Del. Nov. 15, 2012); *Vehicle IP, LLC v. Wal-Mart Stores, Inc.*, No. 10-503-SLR, 2010 WL 4823393, at *2 (D. Del. Nov. 22, 2010). In such cases, "there is a reasonable chance that delay in adjudicating the alleged infringement will have outsized consequences to the party asserting infringement has occurred, including the potential for loss of market share and an erosion of goodwill." *SenoRx, Inc. v. Hologic, Inc.*, No. 12-173-LPS-CJB, 2013 WL 144255, at *5 (D. Del. Jan. 11, 2013).

There may be less cause for concern, however, when there are a number of active firms in the relevant market, *see Air Vent, Inc. v. Owens Corning Corp.*, No. 10-1699-TFM, 2012 WL 1607145, at *3 (W.D. Pa. May 8, 2012) ("[T]he fact that there are other competitors in the

market undermines [the plaintiff's] assertion of undue prejudice because of loss of market value."), and that appears to be precisely the situation here, particularly if the court accepts the defendants' position that the larger biomass-based diesel fuel industry represents the true "market" for purposes of the analysis.[1] (D.I. 31 at 8.) Moreover, it is not always obvious whether the parties, in fact, are direct competitors. In this case, the defendants have correctly noted that "the only proof of 'direct competition' . . . offered by Neste [Oil] is wholly unsupported attorney argument."[2] (*Id.*) Where the question of "direct competition" remains unanswered, courts have sometimes considered whether the plaintiff sought a preliminary injunction. *See, e.g., SenoRx, Inc.*, 2013 WL 144255, at *8 ("Our Court has recognized that if a party seeks a preliminary injunction at the outset of a case, that might also be a factor suggesting that the litigants are direct competitors (if that fact is in question) and that real prejudice could result from the imposition of a stay."); *Ever Win Int'l Corp. v. Radioshack Corp.*, No. 11-1104-GMS-CJB, 2012 WL 4801890, at *7 (D. Del. Oct. 9, 2012) ("Plaintiff never sought a preliminary injunction, which suggests that any prejudice to Plaintiff that might result from delaying the ultimate resolution of this dispute is not as severe as it contends."); *Belden Techs., Inc. v. Superior Essex Commc'ns LP*, No. 08-63-SLR, 2010 WL 3522327, at *3 n.4 (D. Del. Sept. 2, 2010). Here, Neste Oil has not sought a preliminary injunction. Given this failure and the large number of firms in the biomass-based diesel fuel market, the court is not wholly

---

[1] The defendants point out that, while Neste Oil and the defendants produce renewable diesel fuel, as a practical matter they are actually part of a much larger market for government subsidies that function as credit for the production of biomass-based diesel fuels. (D.I. 31 at 8.) The term "biomass-based diesel" encompasses not only renewable diesel, like that produced by the parties to this litigation, but also biodiesel. (*Id.* at 8 n.9.)

[2] The defendants suggest that Neste Oil predominantly serves markets other than North America, noting that its manufacturing facilities are located in Europe and Singapore and that it has submitted no evidence of any sales made within the United States. (D.I. 31 at 8.)

convinced that Neste Oil and the defendants are such "direct competitors" that granting a stay in this matter would cause Neste Oil undue prejudice.

Viewing the "undue prejudice" factor as a whole, the court finds that it weighs lightly against staying this case. Though Neste Oil has not sufficiently demonstrated that it is a direct competitor of the defendants, its arguments to that effect coupled with the early stage of the reexamination process suggest that it might well suffer some degree of prejudice should the court stay this matter. On the other hand, the timing of the reexamination request and motion to stay erase any suspicion of dilatory motive on the defendants' part.[3]

B. Issue Simplification

The second stay factor is "whether a stay will simplify the issues in question and trial of the case." *First Am. Title Ins. Co.*, 2012 WL 769601, at *4 (quoting *Xerox Corp.*, 69 F. Supp. 2d at 406). Staying a case pending PTO reexamination can streamline the litigation in a number of important ways:

---

[3] Both sides present additional arguments in support of their respective positions regarding the "undue prejudice" factor. For the reasons below, none of these supplemental points have significant effect on the court's assessment of this factor.

First, Neste Oil submits that staying this matter "could lead to issues of stale evidence, faded memories, unavailable witnesses, and lost documents." (D.I. 26 at 11.) The court recognizes that these concerns have the potential to disproportionately affect Neste Oil, *see Cooper Notification, Inc. v. Twitter, Inc.*, No. 09-85-LPSm 2010 WL 5149351, at *4 (D. Del. Dec. 13, 2010), but it has not been presented with any information concerning "particular evidence or witnesses threatened by such delay," *SenoRx, Inc.*, 2013 WL 144255, at *7 n.8. As such, the court does not give much weight to this particular consideration in its analysis.

Likewise, Neste Oil's worry that the PTO *inter partes* reexamination represents an inadequate forum for its invalidity dispute, (D.I. 26 at 7–10), is effectively neutralized by the fact that it will be permitted to address Syntroleum's challenged declaration in its response to the PTO's office action, (D.I. 31 at 7.) Likewise, Neste Oil's complaint that staying the case will effectively deprive it of its choice of forum is without merit—a plaintiff has no absolute right to resolution of a dispute in its chosen forum. (D.I. 26 at 10.)

Finally, the defendants suggest that prejudice is unlikely because the '344 Patent will not expire until 2030, leaving Neste Oil with ample time to exploit its patent rights after reexamination. (D.I. 22 at 17.) Neste Oil's representations about the parties' competitive relationship and the "rapidly evolving" nature of the industry, however, give the court reason to at least question the value of post-reexamination exploitation of patent rights. (D.I. 26 at 11.)

6

> (1) all prior art presented to the court at trial will have been first considered by the PTO with its particular expertise, (2) many discovery problems relating to the prior art can be alleviated, (3) if patent is declared invalid, the suit will likely be dismissed, (4) the outcome of the reexamination may encourage a settlement without further involvement of the court, (5) the record of the reexamination would probably be entered at trial, reducing the complexity and the length of the litigation, (6) issues, defenses, and evidence will be more easily limited in pre-trial conferences and (7) the cost will likely be reduced both for the parties and the court.

*Gioello Enters. Ltd. v. Mattel, Inc.*, No. 99-375-GMS, 2001 WL 125340, at *1 (D. Del. Jan. 29, 2001). Here, the defendants suggest that staying the case pending reexamination is likely to narrow the litigation through cancellation or amendment of some or all of the '344 Patent's claims. (D.I. 22 at 8–14.) Neste Oil, however, contends that a stay will not benefit the court, as (1) the two defendants not involved in the reexamination process may argue they are not estopped from raising invalidity issues after reexamination, (2) the litigation involves disputes that cannot be resolved by the PTO, and (3) the claims of the '344 Patent are likely to survive reexamination. (D.I. 26 at 5–7.)

Neste Oil's first two arguments concerning this "issue simplification" factor relate to the limited scope of the PTO reexamination and its consequent inability to fully resolve the dispute before the court. First, Neste Oil accuses the defendants of "procedural gamesmanship," pointing out that only one of the three defendants, Syntroleum, is party to the PTO proceeding. (*Id.* at 5.) Thus, even after reexamination, the remaining two defendants may argue that they should not be estopped from relitigating validity questions. (*Id.* at 5–6.) Similarly, Neste Oil argues that the reexamination will be unable to address many of the issues presented by this case, as the defendants have raised certain affirmative defenses unrelated to validity. (*Id.* at 6.) If the claims of the '344 Patent survive reexamination, these defenses will remain available to the

defendants, including Syntroleum. (*Id.*)

Both these arguments highlight the fact that, should the PTO rule in Neste Oil's favor, a stay pending reexamination would have little narrowing effect on the litigation—the absence of two of the defendants from the PTO proceeding and the assertion of additional defenses ensure that certain issues would remain unresolved. While these arguments are well taken and surely do reduce the potential for issue simplification to some degree, there remains the possibility that, rather than ruling in Neste Oil's favor, the PTO will cancel all the claims before it. If this were to occur, it would effectively end the case and render moot any concerns about the scope of the reexamination process. Thus, the strength of Neste Oil's first two arguments depends largely upon the likelihood of the PTO cancelling or amending the '344 Patent's claims, the very subject of Neste Oil's third argument. As such, the "issue simplification" factor before the court turns largely upon the broader question of the merits of the reexamination request.

Of course, the inherent difficulty with the "issue simplification" factor in this context is that it requires the court to guess at the outcome of a reexamination proceeding that, by definition, has not yet been completed. Both parties advance arguments predicated on assumed outcomes—Neste Oil's logic depends on at least some of the patent claims surviving, while the defendants note that cancellation of all the claims will extinguish the inefficiency concerns highlighted by Neste Oil. Unfortunately, any argument about the likelihood or unlikelihood of patent claims being cancelled during reexamination is speculative. *See Texas MP3 Techs., Ltd. v. Samsung Elecs. Co.*, No. 2:07-CV-52, 2007 WL 2319372, at *2 n.2 (E.D. Tex. Oct. 3, 2007) (describing as "speculative" an argument that claims might be cancelled or narrowed during reexamination and noting that "final disposition of any reexamination proceeding is unknown").

8

Nevertheless, such speculation is precisely what is demanded. Here, the court notes several elements that lead it to conclude there is at least a reasonable chance that some or all of the '344 Patent's claims will be canceled: (1) the defendants' facially plausible argument that the reasoning underlying the PTO's prior cancellation of the '018 Patent will also apply to the '344 Patent (D.I. 22 at 9–13); (2) the PTO's adoption of all four of Syntroleum's proposed grounds of rejection and its rejection of all twenty patent claims in its first office action (D.I. 31 at 2);[4] and (3) the statistical evidence submitted by the defendants suggesting a "high likelihood . . . that reexamination will result in cancellation or amendment of some or all of the claims of the '344 [P]atent," (D.I. 22 at 13). Thus, while the court remains mindful that it should not engage in an premature validity inquiry at this early stage, there is reason to believe that the PTO's reexamination will result in the cancellation of at least some of the claims. To the extent that such cancellation does occur, it will not matter that only Syntroleum is party to the reexamination nor will it matter that defenses unrelated to validity have been raised—the litigation necessarily will be simplified.

---

[4] It is interesting that Neste Oil cites *Softview LLC v. Apple Inc.*, No. 10-389-LPS, 2012 WL 3061027 (D. Del. July 26, 2012), for its argument that the assertion of affirmative defenses unrelated to the question of validity reduces the issue simplification value of granting a stay in this case. (D.I. 26 at 6.) In *Softview*, Judge Stark did find that the simplification factor neither favored nor disfavored a stay, observing that "the scope of the issues to be resolved during litigation substantially exceeds the scope of the issues that can be resolved during the reexamination proceedings." 2012 WL 3061027, at *3. The *Softview* court, however, considered an argument similar to that now advanced by the defendants in this case before concluding its analysis:

> Although Defendants argue that all or most of the claims of the patents-in-suit may be modified or cancelled during reexamination, thus potentially simplifying or eliminating the need for trial, SoftView correctly notes that 14 of the 20 claims asserted against Apple and AT & T presently stand confirmed by the Patent Office as patentable over the prior art identified by Apple in its request for reexamination.

*Id.* In essence, the *Softview* defendants relied on the same position as do the defendants here in responding to the plaintiffs' scope arguments; they noted that the cancellation of patent claims would extinguish the scope concerns. *Softview*, however, dealt with a much different set of facts—while the PTO has rejected all twenty of the '344 Patent's claims here, most of the claims asserted against the *Softview* defendants stood confirmed at the time Judge Stark ruled on the motion to stay. *Id.* This distinction is important, as the strength of the scope argument depends upon the likelihood of claim cancellation, which is at least distantly signaled by a preliminary PTO action.

Accordingly, the court finds that the "issue simplification" factor does lean in favor of granting the defendants' motion to stay. While the scope issues discussed above reduce somewhat the weight of this factor, the potential exists for reexamination to significantly narrow the issues before the court.

C. Stage of Litigation

Finally, the third stay factor, which has the court consider how far litigation has already progressed, weighs heavily in favor of granting the stay. Staying a case in its early stages "can be said to advance judicial efficiency and maximize the likelihood that neither the Court nor the parties expend their assets addressing invalid claims." *SenoRx, Inc.*, 2013 WL 144255, at *5 (internal quotation omitted). On the other hand, when the court is faced with a stay decision in the later phases of a case, "the Court and the parties have already expended significant resources on the litigation, and the principle of maximizing the use of judicial and litigant resources is best served by seeing the case through to its conclusion." *Id.* The present case is in its earliest stages—"the reexamination request was filed prior to any scheduling order being in place, less than three months after litigation began, and before Defendants' answers were due, and where the parties have incurred little, if any, resources with respect to scheduling, discovery disputes, or motion practice." (D.I. 31 at 4.) Indeed, a scheduling order still has yet to be entered.

The court finds Neste Oil's arguments on this point unpersuasive. First, Neste cites again to *Softview LLC v. Apple Inc.*, No. 10-389-LPS, 2012 WL 3061027 (D. Del. July 26, 2012), for its position that the early stage of litigation must be balanced against the correspondingly early stage of the PTO's reexamination. (D.I. 26 at 12.) While the stage of the reexamination process surely plays a role in the broader stay analysis, the court is unconvinced that it should affect the

10

weight of this particular factor. As an initial matter, the *Softview* decision cited by Neste Oil is readily distinguishable from the facts now before the court.[5] *See* 2012 WL 3061027, at *4. Moreover, the court has already accounted for the stage of the reexamination process within its analysis of the "undue prejudice" stay factor. Neste Oil next contends that a backlog of PTO reexaminations will unduly delay resolution of the '344 Patent's reexamination and, if a stay is granted, resolution of this case. (D.I. 26 at 13–14.) This argument, however, also falls more properly under the "undue prejudice" stay factor—it has little to do with the stage of the litigation.

Accordingly, the "stage of litigation" factor weighs strongly in favor of granting the defendants' motion to stay.

## V. CONCLUSION

For the foregoing reasons, the court believes that staying this litigation pending the PTO's reexamination of the '344 Patent will serve the interests of judicial efficiency, and the court therefore will grant the defendants' Motion to Stay (D.I. 21.)

Dated: January 31, 2013

CHIEF, UNITED STATES DISTRICT JUDGE

---

[5] In *Softview*, Judge Stark found that the "stage of litigation" factor did not favor a stay because "the economies that might otherwise flow from granting a stay early in a case are somewhat offset by the substantial resources already incurred by both the parties and the Court in this litigation." 2012 WL 3061027, at *4. Specifically, the court noted that "[s]ubstantial time and resources have been devoted . . . to scheduling and the resolution of discovery disputes, as well as Defendants' motions to sever, stay, and dismiss." *Id.* Judge Stark also observed that the *inter partes* reexamination request had been filed approximately one year after the case was commenced and that an *ex parte* request had been filed even more recently. *Id.*

In this case, neither the court nor the parties have yet devoted "substantial time and resources." Additionally, as noted above, Syntroleum's reexamination request was filed less than three months after Neste Oil brought this suit.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| NESTE OIL OYJ, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DYNAMIC FUELS, LLC, SYNTROLEUM )<br>CORPORATION, and TYSON FOODS, INC., )<br>)<br>Defendants. )<br>) | Civil Action No. 12-662-GMS |

## ORDER

At Wilmington this 31st day of January 2013, consistent with the memorandum opinion issued this same date, IT IS HEREBY ORDERED THAT:

The defendants' Motion to Stay Litigation Pending Reexamination of the Patent-In-Suit. (D.I. 21) be GRANTED.

_____
CHIEF, UNITED STATES DISTRICT JUDGE